UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

ROBERT L. EMERY, JR.,

        Plaintiff,

        v.

OREGON DEPARTMENT OF
CORRECTIONS (ODOC), an Agency of the
State of Oregon; OREGON CORRECTIONS
ENTERPRISES )OCE), an Agency of the
State of Oregon; Mr. Castanon, OCE
Production Manager; Mr. Poppell, OCE
Production Manager; Lori Hensel, OCE
General Manager,

        Defendants.

Case No. 2:24-cv-01847-MC

**OPINION AND ORDER**

MCSHANE, Chief Judge.

    Plaintiff, an adult in custody (AIC) at the Two Rivers Correctional Institution (TRCI),

filed suit alleging violations of the Americans With Disabilities Act (ADA), the Rehabilitation

1 -    **OPINION AND ORDER**

Act (RA), and the Equal Protection Clause of the Fourteenth Amendment. Plaintiff alleges that Defendants discriminated against him and denied him equal protection of the law by reassigning him from a job in the TRCI laundry without providing accommodations for his disability. Defendants now move for summary judgment. Because Plaintiff fails to show that he was otherwise qualified to perform the job in the TRCI laundry or that Defendants intentionally discriminated against him, Defendants' motion is GRANTED.

## BACKGROUND

The Oregon Department of Corrections (ODOC) is constitutionally required to provide AICs with "work or on-the-job training programs." Or. Const. Art I, § 41(2). These programs must be "cost-effective" and "designed to develop inmate motivation, work capabilities and cooperation." *Id*. Oregon Corrections Enterprises (OCE) is a semi-independent state agency that provides work and training programs to AICs. Doolin Decl. ¶ 3 (ECF No. 45). At TRCI, OCE operates an industrial laundry, a wood shop, and a soft furnishing facility. *Id.* ¶ 4. TRCI also offers non-OCE work positions, including custodians, orderlies, and library clerks. Hunter Decl. ¶ 4 (ECF No. 43).

The OCE laundry facility at TRCI processes 25,000 pounds of laundry every day. Doolin Decl. ¶ 6. Because the laundry is a part of the State of Oregon's emergency preparedness operations and provides hospitals with essential laundry services, *id.* ¶¶ 6-7, the "laundry is an active and busy operation with constant movement of large laundry carts and personnel in tight spaces." Timmerman Decl. ¶ 7 (ECF No. 44); *see also* Doolin Decl. ¶ 8. The laundry operates in two shifts: 5:45 a.m. to 12:30 p.m. and 1:00 p.m. to 8:30 p.m., with approximately 110 AICs assigned to each shift. Timmerman Decl. ¶¶ 3-4. TRCI laundry workers stand for several hours at a time and lift forty to fifty pounds of linen from laundry carts to standing-height tables, with

2   -   **OPINION AND ORDER**

each laundry cart carrying between 200 and 250 pounds of linen. *Id.* ¶¶ 5-6; Doolin Decl. ¶ 8 & Ex. 2.

According to Plaintiff, he has nerve damage in both feet "which causes excruciating pain and suffering" and precludes him from "standing for long periods of time." Am. Compl. ¶¶ 10, 15 (ECF No. 10). Despite this disability, in April 2024, Plaintiff applied for a position in OCE's industrial laundry facility at TRCI. Doolin Decl. Ex. 1 at 1. When asked whether he had any restrictions that may prevent him from working at the laundry, Plaintiff responded, "no." *Id.* Ex. 1 at 2. Plaintiff was assigned to a position in the laundry. Am. Compl. ¶ 8.

On April 12, 2024, Plaintiff arrived for his laundry position and "quickly learned that his job required standing for seven to eight hours a day folding towels, hospital scrubs, sheets, etc. with no breaks except for a thirty-minute lunch break." *Id.* ¶ 9. Plaintiff could not perform those duties without the use of his wheelchair. *Id.* The next day, Plaintiff arrived for his shift in his wheelchair, and Defendant Poeppel informed Plaintiff that he could not perform work at the laundry in a wheelchair. *Id.* ¶ 11. On April 15, 2024, Plaintiff again showed up to his laundry position in his wheelchair, and Defendants Castanon and Hensel also informed him that the position could not be performed in a wheelchair. *Id.* ¶ 12.

On November 5, 2024, Plaintiff filed suit in this action.

## **DISCUSSION**

Plaintiff alleges that Defendants discriminated against him on the basis of disability and denied him equal protection of the law by prohibiting him from performing his laundry position in a wheelchair. Defendants move for summary judgment on grounds that Defendants' decision to reassign Plaintiff was not discriminatory under the ADA and was rationally related to legitimate correctional interests.

3  -  **OPINION AND ORDER**

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of establishing the absence of any genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once this initial burden is met, the burden shifts to the non-moving party to demonstrate through the production of probative evidence that an issue of fact remains to be tried. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The Court must construe the evidence and all reasonable inferences in favor of Plaintiff, the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 255 (1986). The Court "does not weigh the evidence or determine the truth of the matter, but only determines whether there is a genuine issue for trial." *Balint v. Carson City*, 180 F.3d 1047, 1054 (9th Cir. 1999). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec.*, 475 U.S. at 587 (citation and quotation marks omitted).

Because Plaintiff is self-represented, the Court construes her filings liberally. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Walker v. Beard*, 789 F.3d 1125, 1133 (9th Cir. 2015). However, Plaintiff is not relieved of the "obligation to show a genuine issue of material fact for trial through the presentation of specific, admissible evidence." *Epling v. Komathy*, No. CV 10-5862-GAF (RNB), 2011 WL 13142131 (C.D. Cal. Dec. 5, 2011).

1.  <u>Disability Discrimination Claims</u>

The ADA and RA prohibit public entities, including state prisons, from discriminating against a qualified individual with a disability. 42 U.S.C. § 12132; 29 U.S.C.A. § 794(a); *see also Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998) (finding that "State prisons fall

**4  -  OPINION AND ORDER**

squarely within the [ADA] definition of 'public entity'"). To sustain a claim under the ADA and

RA, Plaintiff must establish that:

> (1) he "is an individual with a disability;" (2) he "is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities;" (3) he "was either excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity;" and (4) "such exclusion, denial of benefits, or discrimination was by reason of [his] disability."

*McGary v. City of Portland*, 386 F.3d 1259, 1265 (9th Cir. 2004) (citation omitted); *see also*

*Zukle v. Regents of the Univ. of Cal.*, 166 F.3d 1041, 1045 n.11 (9th Cir. 1999) ("There is no

significant difference in analysis of the rights and obligations created by the ADA and the

Rehabilitation Act.").

"To recover monetary damages under Title II of the ADA or the Rehabilitation Act, a

plaintiff must prove intentional discrimination on the part of the defendant." *Duvall v. County of

Kitsap,* 260 F.3d 1124, 1138 (9th Cir. 2001). Plaintiff may establish intentional discrimination

under the ADA by showing that Defendants acted with "deliberate indifference." *Id.* "Deliberate

indifference requires both knowledge that a harm to a federally protected right is substantially

likely, and a failure to act upon that likelihood." *Id.* at 1139.

The record does not reflect that Plaintiff was denied the benefits of ODOC's services,

programs, or activities. TRCI provides work and training programs through OCE and non-OCE

positions, and Plaintiff does not allege that he was denied all work assignments because of his

wheelchair or disability. Defendants maintain Plaintiff is qualified for other work assignments,

with or without reasonable accommodations for his wheelchair, including assignments as an

orderly or library clerk. *See* Hunter Decl. ¶¶ 4-5. Plaintiff fails to identify any special

characteristic of the laundry position such that his reassignment denied him a specific benefit of

the TRCI work program.

**5    -    OPINION AND ORDER**

Even if employment in the TRCI laundry qualifies as a stand-alone benefit, service, or program, Plaintiff cannot show that he was "otherwise qualified" for a laundry position.

"The term 'qualified individual with a disability' means an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, … meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C.A. § 12131(2). According to Defendants, the essential qualifications of laundry positions include the ability "to stand up to nine hours at a time" and "to lift 40 pounds." Doolin Decl. Ex. 2.[1] Plaintiff admits that he cannot stand for long periods of time and bears the burden of establishing "'the existence of a reasonable accommodation,'" i.e., the use of a wheelchair, that would enable him to perform the duties of a laundry worker. *Pierce v. Cnty. of Orange*, 526 F.3d 1190, 1217 (9th Cir. 2008).

Defendants argue that Plaintiff's requested accommodation is unreasonable for two reasons: 1) OCE must maintain the safety of AICs working in a fast-paced industrial environment, and 2) OCE must maintain the efficiency and output levels of the laundry to support critical facilities, such as hospitals. Defs.' Mot. Summ. J. at 7 (ECF No. 42); Timmerman Decl. ¶ 9; Doolin Decl. ¶¶ 6-8. Defendants explain that the TRCI laundry is a fast-moving industrial environment with AICs constantly moving large, heavy carts of laundry throughout the facility, and AICs must be able to stand for long periods of time to perform the job's essential functions. Doolin Decl. ¶¶ 6-8; Timmerman Decl. ¶¶ 5-7, 9. Defendants argue that allowing an AIC to use a wheelchair would pose safety risks to AICs and fundamentally alter the nature of

---

[1] I note that the job description for a TRCI laundry worker includes the ability to "stand up to nine hours at a time," Doolin Decl. Ex. 2, while the Laundry Production Manager states that a laundry worker must be able to "stand for four hours at a time." Timmerman Decl. ¶ 5. However, I do not find these requirements necessarily inconsistent. Laundry workers are provided with a 30-minute lunch break, Am. Compl. ¶ 9, and I construe these requirements to mean that a laundry worker must be able to stand up to four hours without a break, and up to nine hours total per shift.

6  -  **OPINION AND ORDER**

the laundry, because it must function at a pace necessary to meet the demands placed on the facility. *Id.*

In response, Plaintiff claims that the nine-hour standing requirement is a "post-hoc justification" for removing him from his laundry position and that Defendants intentionally discriminate against wheelchair users. Pl.'s Response at 3 (ECF No. 47). Plaintiff maintains that "wheelchair users were never permitted to work inside [the] OCE Laundry" and that even non-disabled AIC laundry workers have been struck and injured by laundry carts. Pl's Response at 2, 4 & Exs. 1-5.

Plaintiff's "post hoc' argument is belied by his own allegations asserting that he knew the laundry position "required standing for seven to eight hours a day" on the first day of his assignment. Am. Compl. ¶ 9. Plaintiff also received an email from the statewide ADA Coordinator explaining, "According to the documentation I reviewed, you applied for an IWP program with OCE which clearly outlined the minimum qualifications, duties, and requirements in the announcement posted for all AICs to apply," including the "ability to stand for up to nine hours at a time." Pl.'s Response Ex. 22. Thus, Defendants' stated reasons for Plaintiff's reassignment are not "post-hoc."

Further, the ADA "requires only 'reasonable modifications' that would not fundamentally alter the nature of the service provided, and only when the individual seeking modification is otherwise eligible for the service." *Tennessee v. Lane*, 541 U.S. 509, 532 (2004); *Pierce*, 526 F.3d at 1216-17. Because an AIC's statutory rights "must be analyzed 'in light of effective prison administration,'" a court may consider, "with deference to the expert views of facility administrators," the correctional facility's "legitimate interests" when determining whether an accommodation is reasonable. *Pierce*, 526 F.3d at 1216-17 (citations omitted).

7   -   **OPINION AND ORDER**

Defendants assert legitimate interests of safety and efficient productivity in operating the TRCI laundry, and the prohibition against wheelchairs is "reasonably related" to those interests. *Id.* at 1216. Plaintiff presents no persuasive evidence to rebut Defendants' concerns, and the fact that no wheelchair user has worked in the laundry does not infer discriminatory intent by Defendants, particularly when even able-bodies laundry workers face safety risks.

Given Defendants' legitimate correctional interests and the deference afforded to them, allowing Plaintiff to use a wheelchair in the TRCI laundry is not a reasonable accommodation to meet the "essential requirements" of the laundry position. 42 U.S.C.A. § 12131(2); *see Jenkins v. Roberts*, No. 2:25-CV-00295-SB, 2025 WL 2817638, at *6 (D. Or. Oct. 3, 2025) (finding that the plaintiff was not "'otherwise qualified' to work in TRCI's kitchen given the eight-hour work requirement" and the plaintiff's "four-hour work restriction"). Accordingly, Plaintiff fails to show that he was "otherwise qualified" for the TRCI laundry position and summary judgment is granted on Plaintiff's ADA and RA claims.

2. Equal Protection Claim

The Equal Protection Clause of the Fourteenth Amendment requires that "all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). To facilitate judicial review of laws or policies that allegedly violate equal protection rights, the Supreme Court has developed "tiers of judicial scrutiny against which a government's classification can be measured." *Poe by & through Poe v. Labrador*, 709 F. Supp. 3d 1169, 1190 (D. Idaho 2023). "The level of scrutiny applied to any given law depends on the characteristics of the disadvantaged group, or the rights implicated by the classification." *Id.*

If government action restricts access to a fundamental right or discriminates against a suspect class, the action must withstand strict scrutiny and be narrowly tailored to serve a

**8  -    OPINION AND ORDER**

"compelling state interest." *Cleburne*, 473 U.S. at 440. Government action that discriminates on the basis of a "quasi-suspect" classification, such as sex or gender, must meet "heightened" scrutiny and be "substantially related to a sufficiently important governmental interest." *Id.* at 40-41. Finally, government action that treats groups of people differently but does not infringe upon a fundamental right or target a protected class must survive rational basis scrutiny and be "rationally related to a legitimate state interest." *Id.* at 440.

Plaintiff is not a member of a protected class and alleges no infringement of a fundamental right. *Payan v. Los Angeles Cmty. Coll. Dist.*, 11 F.4th 729, 737 (9th Cir. 2021) (stating that "legal classifications based on disability are subject only to rational basis review"); *Vignolo v. Miller,* 120 F.3d 1075, 1077 (9th Cir. 1997) (stating that an AIC has no constitutional right to prison employment). Thus, Defendants need only provide a rational basis for their decision to reassign Plaintiff from the laundry.

As explained above, Defendants maintain that allowing Plaintiff to work in the laundry with a wheelchair would pose safety and productivity concerns. These reasons survive rational basis scrutiny, and summary judgment is granted on Plaintiff's equal protection claim.

## CONCLUSION

Defendants' Motion for Summary Judgment (ECF No. 42) is GRANTED and this action is DISMISSED with prejudice.

IT IS SO ORDERED.

DATED this 20th day of March, 2026.

s/  Michael J. McShane
MICHAEL J. MCSHANE
United States District Judge

**9   -   OPINION AND ORDER**